UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>LOGAN PROCELL, )<br>)<br>Defendant. ) | CRIMINAL NO. 17-CR-10337-DJC |

### GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Logan Procell pled guilty to the above-docketed indictment, which charges him with one count of coercion and enticement, in violation of 18 U.S.C. § 2422(b), and one count of transfer of obscene material to minors, in violation of 18 U.S.C. § 1470. For the reasons discussed in greater detail below, the government respectfully requests that this Court impose a low-end Guideline sentence, which includes a term of incarceration of 210 months.

### FACTS

The government relies on and incorporates the facts as set forth in the statement of offense conduct in paragraphs 7 through 15 of the Presentence Investigation Report ("PSR"). The government also submits for the Court's review a copy of the text messages referenced in the PSR, which the government is seeking to file under seal as Exhibit A.

In summary, the defendant systematically groomed an 11-year-old child that he observed on the internet, essentially hunting her as he followed her from one public social media platform to another more private social media platform to direct messaging. He did so while he was employed as a teacher – a universally recognized position of honor, trust, and responsibility that he violated by sending Minor A lewd text messages from his own classroom while he wore his school ID. The defendant used his position of trust to paint himself as her protector, but attempted

to manipulate her into envisioning a life for them together as a couple. The defendant clearly knew that what he was doing was both morally repugnant and legally forbidden, and he chose to do it anyway, encouraging Minor A to keep their relationship secret so that he would not get in trouble.

## DISCUSSION

### I.   Sentencing Guideline Calculation

Based on its computation of the defendant's total offense level as 37 and his criminal history category as I, the United States Probation Office ("Probation") has computed a Guideline sentence in this case to include a term of incarceration from 210 months to 262 months; the Guideline range of supervised release is five years to life.

The government agrees with Probation's calculation of the defendant's Offense Level and Criminal History Category (PSR 19-40), and thus agrees with its determination of his Guideline sentencing range (GSR) as outlined above.

### II.   The Defendant's Request for a Downward Variance

The government anticipates that the defendant will recommend that this Court sentence him to the mandatory minimum term of incarceration: 120 months. To do so would constitute an approximately 43% downward variance from the low end of the GSR. At the time of the filing of this memorandum, the government has not received a copy of any written filing in support of such a recommendation, apart from the defendant's written objections to ¶ 100 of the PSR, in which he essentially cites to § 3553(a) factors that this Court must consider (the history and characteristics of the defendant). For the reasons that follow, along with argument to be made at the sentencing hearing, the government urges this Court to reject that request and impose a Guideline sentence.

### III.     Application of the Section 3553(a) Factors

The GSR as calculated here – 210 to 262 months – does represent, indeed, a severe range of punishment. The recommended punishment, however, is one that reasonably fits the crimes that the defendant has pled guilty to. Based on an evaluation of all of the § 3553(a) factors, this Court should impose a low-end Guideline sentence, which, in this case, is 210 months (17.5 years).

#### A.     Nature and Circumstance of the Offense and History and Characteristics of the Defendant

The defendant's capitalization on the vulnerability of the victim identified in this case is clear: as he got to know her over months of direct communication, he was clearly able to identify her vulnerabilities and play off them to his advantage. For example, he assuaged her vocalization of self-consciousness and self-doubt with assurances that she was beautiful, both on the outside (Exhibit A, pp. 9, 31, 55, 60) and the inside (Exhibit A, p. 9-10: "*It won't be awkward[.] I will never feel that way about you[.] You're the nicest funniest girl I've talked to[.] And you're so young, you're smart and brilliant[.] I love that about you[.] You're special[.]*"). The defendant told 11-year-old Minor A that he loved her (Exhibit A, pp. 10, 41, 51, 61) and planned for when they could be together (Exhibit A, p. 63: "*I'll come visit during the winter and we can go on a real date[.]…I can take you anywhere [b]ecause I'm an adult[.]*").

The PSR notes that the defendant's mother viewed this behavior (i.e., the criminal conduct) as "out of character." PSR ¶ 56. He is, in certain respects, every parent's worst nightmare: a predator hiding in plain sight. The defendant's perceived "normalcy" is what, ironically, makes him so dangerous. Prior to his arrest in this case, he had no criminal record. He functioned as a normal member of a large family. He held jobs that were, objectively, service motivated – as a teacher, but also within family businesses when he was needed. This non-threatening public and

private persona is precisely what makes the truth of his character and the way in which he victimized this child so jarring.

The seriousness of this offense cannot be overstated. The defendant notes in his objections to the PSR that "it was unlikely that he was actually planning to travel to Massachusetts to meet the underage victim." D. Ltr. ¶ 4. The fact that the defendant did not compound the damage he inflicted on Minor A by victimizing her in person does not vitiate his culpability for the crimes with which he was charged – if he *had* done so, he would have been charged with additional offenses. To term this failure to travel as a mitigating factor in assessing his culpability minimizes the defendant's role in the devastation that he has wreaked and impermissibly shifts the Court's focus from the defendant's predation to a hypothetical consideration of ways that he *could have* behaved worse. As Minor A's mother articulates in her victim impact statement, to his victim, the defendant could *not* have behaved worse.

Similarly, any attribution of the defendant's criminal behavior to the emotional distress of losing his father [PSR ¶ 56] is obviously misguided. The defendant – in what our society often reveres as one of the most important roles in a child's life – committed one of the most horrendous violations of trust that we, as a society, can imagine. As a teacher, the defendant should have dedicated his life to protect children, to teach children to believe in themselves, and to encourage children to view themselves as more than objects. Instead, he leveraged that position of trust and authority as a tool to get Minor A to view him as a good catch – writing to her that he would do her homework for her (Exhibit A, p. 27), protect her from bullies (Exhibit A, p. 56), and wait until she was ready to have sex (Exhibit A, pp. 63-65). He did so knowingly, over a period of time, in a manner designed to shield himself from liability, with one goal in mind: his own sexual gratification.

## B. Respect for the Law, Just Punishment, Adequate Deterrence, and Protection of the Public

The government recognizes that it is difficult to quantify exactly how many years would satisfy the Court's obligation to impose a sentence that is just, that would adequately deter both this defendant and others who might commit the same types of horrific crimes against children, and that would protect the most vulnerable members of our society. Ultimately, this Court can be confident that a Guidelines sentence will achieve all of these goals of sentencing.

This Court must view with significant skepticism any conclusory statement that *this* defendant presents little risk to recidivate (i.e., be *caught* reoffending). Conversely, the fact that the defendant appeared to be a functioning member of society contributed to his dangerousness; no one knew or, presumably, *suspected* that he was carrying on a sexually graphic online relationship with an 11-year-old child, sending him pictures of his penis and coercing and enticing her to send him pictures of her own naked body and ultimately, meet to have sex. He did so from his home and his school, right under his family's and coworkers noses, and there is no reason to believe that anything but a lengthy term in prison will deter him from committing similar offenses in the future, especially given his own admission that he is a pedophile (Exhibit A, p. 72).

Similarly, the fact that the defendant comes before this Court with no prior record is not a mitigating factor in the context of these offenses. The defendant's record was taken into consideration in the calculation of his criminal history category. See, e.g., United States v. Oberg, 877 F.3d 261 (7th Cir. 2017)(30 year sentence for conviction of § 2251 offenses involving one victim reasonable; district judge properly noted that defendants in child pornography cases often have limited criminal histories).

Ultimately, there are no truly mitigating factors significant enough to merit the weight that this Court would have to assign them in applying the degree of variance (43%) that the government

believes the defendant will seek.  This defendant, through the crimes documented in this case, has demonstrated himself to be a manipulative offender with no demonstrated ability or attempts to cease, control, or even understand his behavior.  In order to accomplish the goals of sentencing – particularly deterrence and protection of the public – the defendant *must* be sentenced to a truly significant term of imprisonment.

     The government recognizes that this is not the type of case that this Court sees frequently, and as such, it may be difficult to quantify in years "how much" is "enough" to adequately punish the defendant, deter similar criminal conduct, and protect the public.  The bottom line is that this is *not* a case that merits the minimum possible punishment allowable by law.  While the guideline sentence here is relatively high, it is entirely reasonable given all of the considerations outlined above.  A sentence above the minimum proscribed by statute is not only reasonable, but necessary in this case to promote respect for the law, to adequately punish the defendant for his criminal conduct, to deter him and others from offending in the same ways again, and for long-term protection of the public.

## CONCLUSION

For all of the foregoing reasons, the government respectfully recommends that this Court impose a sentence of 210 months in prison, a period of five years of supervised release, and, in addition to the special assessments outlined in 18 U.S.C. §§ 3013 and 3014, impose restitution following a hearing at a future date. Such a sentence would be sufficient, but not greater than necessary, to reflect the seriousness of the offense and the goals of sentencing.

Respectfully Submitted,

ANDREW E. LELLING
United States Attorney

Dated: June 14, 2019          By:   /s/ Anne Paruti
                                    Anne Paruti
                                    Mackenzie Queenin
                                    Assistant United States Attorneys
                                    One Courthouse Way, Suite 9200
                                    Boston, MA 02210
                                    (617) 748-3100

## CERTIFICATE OF SERVICE

I, Anne Paruti, hereby certify that the foregoing was filed through the Electronic Court filing system and will be sent electronically to the registered participant as identified on the Notice of Electronic filing:

Date: June 17, 2019                    /s/ Anne Paruti
                                       Anne Paruti
                                       Assistant United States Attorney