```
 1                     UNITED STATES DISTRICT COURT
                        DISTRICT OF MASSACHUSETTS
 2

 3   _____

 4   UNITED STATES OF AMERICA,

 5                   Plaintiff,       Criminal Action
                                      No. 17-10337-DJC
 6   V.
                                      September 10, 2019
 7   LOGAN PROCELL,

 8                   Defendant.

 9   _____

10

11           TRANSCRIPT OF STATEMENT OF REASONS

12           BY THE HONORABLE DENISE J. CASPER

13             UNITED STATES DISTRICT COURT

14            JOHN J. MOAKLEY U.S. COURTHOUSE

15                  1 COURTHOUSE WAY

16                   BOSTON, MA  02210

17

18

19

20
             DEBRA M. JOYCE, RMR, CRR, FCRR
21              Official Court Reporter
             John J. Moakley U.S. Courthouse
22            1 Courthouse Way, Room 5204
                   Boston, MA  02210
23               joycedebra@gmail.com

24

25
```

1          *   *   *   *   *   *   *   *   *   *

2          THE COURT: Counsel, I appreciate the arguments on
3  either side. I had given them consideration before today's
4  hearing, and I gave it some further thought in light of the
5  arguments today.
6          Counsel, let me give you the benefit of my findings,
7  and Mr. Procell as well.
8          The restitution at issue is governed by Title 18,
9  United States Code, Section 2429. It's mandatory, but the
10 amount is to be determined, Mr. Procell, by assessing the
11 amount of the victim's losses under the standards set in
12 2259(c)(2), which is restitution for the full amount of a
13 victim's losses defined as any cost incurred or reasonably
14 projected to be incurred by the victim as a proximate result of
15 the offenses committed in this case, and those may include
16 costs for medical services related to psychiatric or
17 psychological care and what's referred to as lost income.
18         I've considered those standards in light of the record
19 that's before me, not just on restitution, but in regards,
20 Mr. Procell, to your sentencing as a whole, and I do want to
21 say a few things about the findings I'm going to make.
22         There's no precise formula for determining what a
23 reasonable amount of restitution would be. The case law guides
24 me in saying that I need to rely on information that bears
25 sufficient indicia of reliability, and I need to make a

reasonable determination to achieve some fairness to the victim and restore the victim to the position that she was in prior to the crimes that she was subjected to.  And I cite here to a few cases in the 1st Circuit, U.S. v. Gallardo-Ortiz, 666 F.3d 808, 811 (1st Cir. 2012), U.S. v. Corey, 77 F. Appx. 7, 10 (1st Cir. 2003), and U.S. v. Newell, 658 F.3d 1, 34 (1st Cir. 2011).

Certainly, Mr. Carney, I understand your argument, but I don't agree that it's rank speculation that the victim here, Minor A, will need therapy into her teens.

I'm relying not just on the letter from her social worker and therapist, but on all of the record together.  In regards to the therapist's letter, certainly its description perhaps could have been more fulsome, but even this letter alone makes reference to Minor A requiring ongoing therapy at least until she's 18, not until she's 18, but at least until she's 18.  And I should say that I've considered this letter in conjunction with the records produced to me indicating that she has been in what is almost weekly therapy for over a year's time.

I've also considered, as it's appropriate for me to do, all of the information before me at sentencing, including the victim impact statement, and I'm not going to repeat everything that was recited in that letter, but I just note on page 2 of that letter that her mother, who I take to be a reliable reporter, indicates that she started therapy soon

1  after -- this is in reference to Minor A -- she started therapy
2  soon after and has been in therapy ever since and will continue
3  for the undetermined future.  Even though she's on anti-anxiety
4  medication, she's had up to eight panic attacks a day.  She has
5  fainted, collapsed, and has been unresponsive during these
6  attacks.  They happen at any time.  She goes on to talk about
7  her threatening suicide and the other struggles she's had in
8  the wake of the crimes that have been committed here.
9          With all of the evidence before me, I do think there's
10  a reasonable basis for imposing at least some of the
11  restitution that the government is seeking here, and I do so on
12  the basis in the record that I've summarized just now.
13          For all of those reasons -- and I should say just in
14  regards to the Rogers case, 758 F.3d 37, 39 (1st Cir. 2014), I
15  did take note of the findings there.  I do think that this is a
16  different case, Mr. Carney.  I think there were different
17  concerns that the District Court and the 1st Circuit were
18  struggling with there, not just from the Rogers case, but from
19  other cases I think, as Ms. Paruti's comments suggest, that the
20  victim there, Vicky, had been the noted victim in a number of
21  cases.  I think the circuit was concerned with essentially
22  overcompensating and double-counting her harm where the images
23  captured of Vicky had been the subject of various prosecutions.
24  That's not the case here.  I think it's a very different
25  circumstance here, where we have a single defendant and a

1  single victim who was subject to the harm here.  So although I
2  took some instruction from Rogers, I do think it's
3  distinguishable on the facts here.
4          All of that having been said, I will impose
5  restitution in an amount that reflects the continued therapy
6  until age 18, that amount is $53,760; the medication over that
7  period of time, which was estimated as $1,070.58.  I also think
8  one of the harms as a proximate result of the offenses was the
9  seizure of the two electronic items, the iPhone and the iPad,
10 (11:30) those costs of $350 and $259.  Adding all of those costs
11  together is $55,439.58, which is the restitution that I will
12  impose here.
13          I'm not going to impose Minor A's mother's
14  out-of-pocket -- well, it's not out-of-pocket, but the money
15  she estimated for her lost time.  As I think the government has
16  conceded, she's a salaried employee; she's not actually lost
17  any income.  I don't think it would be appropriate for me to
18  impose that here.  And I noted Mr. Carney's objection to that,
19  so I'm not going to impose that portion of restitution.
20                  *   *   *   *   *   *   *   *   *   *
21
22
23
24
25